# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

LESTER PERKINS,             )
                                        )
           Plaintiff,          )
                                          )
v.                                   )     No.: 3:12-CV-403-TAV-BHG
                                          )
ROGERS GROUP, INC.,     )
                                          )
           Defendant.      )

## <u>MEMORANDUM OPINION</u>

Lester Perkins has brought this action against his former employer, Rogers Group, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and for wrongful/retaliatory discharge under the FLSA as well as under Tennessee common law. Perkins contends that he was not paid for his travel time from Campbell County, Tennessee, where he lived, to Jamestown, Tennessee, where he worked on occasion as a truck driver and performed his job. Perkins alleges that he regularly complained about nonpayment of wages for his travel time and, as a result of these complaints, he was wrongfully discharged.

Defendant Rogers Group moves for summary judgment on all Plaintiff's claims stating that the undisputed material facts demonstrate that Plaintiff was paid for all time to which he was entitled under the FLSA, and his claim for wrongful discharge fails as a matter of law under the FLSA as well as Tennessee common law.

The Court has carefully considered the motion and, for the reasons stated herein, finds that Defendant's motion for summary judgment should be granted.

## I.    Background

Plaintiff was hired as a dump truck driver for Rogers Group on July 1, 2008 [Doc. 14-3].  He was temporarily laid off for lack of work on January 3, 2010 and rehired on March 25, 2010.  *Id.*  Earl Webster was the Truck Superintendent and Shop Manager for Defendant and supervised the dump truck drivers, the dispatcher, and mechanic and lowboy drivers.  Webster was Plaintiff's immediate supervisor [Doc. 14-2].

Whenever trucks were left overnight in Jamestown, Fentress County, Tennessee, Defendant furnished a van for drivers who wanted to ride to work the next day instead of driving their personal vehicles [Doc. 14-1].  The van was provided as a courtesy to employees because of the cost of gas and other expenses associated with use of their own vehicles.  *Id.*  Defendant states that no employee was forced to ride the van and the drivers had the choice to ride the van or drive themselves to the work site in Jamestown. *Id.*  Plaintiff lives in Pioneer, Campbell County, Tennessee.  *Id.*  Plaintiff states that he could have driven his own car, however, he was told to ride in the van from Caryville to Jamestown by the dispatcher for Rogers Group; therefore, when Plaintiff worked in Jamestown, he rode the van instead of driving his personal vehicle.  *Id.*

Defendant did not consider Plaintiff to be "on the job" until he reached the work site at Jamestown, Tennessee.  *Id.*  Plaintiff, however, expected to be paid from the time he reported for the ride to Caryville to Jamestown, and on the ride back from Jamestown

2

to Caryville. *Id.* Defendant did not require Plaintiff or other employees to perform any work during the commute to Jamestown. *Id.* When Plaintiff worked in Knoxville, he commuted to work by car, not by Company van. *Id.* Plaintiff never reported his complaints about riding in the van without being paid to anyone at Rogers Group other than complaining verbally to his immediate supervisor, Earl Webster. *Id.* Plaintiff never made any complaints about riding in the van without being paid to any state or federal agency. *Id.*

As a truck driver for Rogers Group, Plaintiff was required to complete a Driver's Log each day. *Id.* On or about April 16, 2010, Webster prepared a sample Log to show Plaintiff how to log driving time, as opposed to not driving but on duty time, for stops and loading [Doc. 14-2]. Defendant states the Log was only a sample, and Webster did not intend for Plaintiff to sign the sample Log; however, Plaintiff signed his name to the sample Log and used this as his own Log. *Id.* Plaintiff denies that Webster ever assisted him with preparing his Log entries [Doc. 14-1].

Plaintiff completed two "Driver's Daily Logs" for the same day, July 10, 2010 [Doc. 14-2]. One Log dated July 10 contained entries for 11.5 hours of work time and the other Log dated July 10 contained the notation "off duty." *Id.* Plaintiff admitted in his deposition that the "off duty" Log entry should have been dated July 11, 2010 [Doc. 14-1].

On July 14, 2010, Rogers Group scheduled and paid for a Department of Transportation (DOT) examination for Plaintiff because Rogers Group expected that

Plaintiff would continue to work as a driver for the Company [Doc. 14-3]. On July 15, 2010, Webster called Plaintiff into his office at Knoxville to correct one of the dates on his two Log entries for July 10, 2010 [Doc. 14-2]. Webster told Plaintiff that he could not return to work until he corrected the date on one of the Log entries. *Id.* Plaintiff told Webster that he was not changing anything and that he was mad because he was not getting paid to travel to and from his job assignment in Jamestown. *Id.* Defendant asserts that all Plaintiff had to do was correct the date on one of his duplicate Log entries for July 10, and he could have gone back to work that same day, but Plaintiff refused to do so and left Webster's office. *Id.* The last day that Plaintiff worked for Rogers Group was July 15, 2010. *Id.*

Plaintiff denies that Webster called him into his office to correct the Logs, and never told Plaintiff that he could return to work [Doc. 14-1]. Plaintiff admits telling Webster that he was upset over not getting paid for travel time to Jamestown. *Id.*

Defendant states that plaintiff was expected to report to work on July 16, 2010, but he did not call in or report for work for three consecutive days, July 16, July 17, and July 19, 2010 [Doc. 14-2]. Plaintiff received his assignments for each day via the computer in his truck [Doc. 14-1]. The assignments were sent to Plaintiff via his truck computer by the Rogers Group dispatcher. *Id.* Plaintiff had to be physically in his truck to receive the assignments on the computer, or he had to call the dispatcher if he was not in his truck. *Id.* Plaintiff was not in his truck to receive his assignments for July 16, 17, or 19, and he

Case 3:12-cv-00403-TAV-HBG   Document 27   Filed 11/21/13   Page 4 of 28   PageID #: 213

did not call the dispatcher to receive assignments [Doc. 14-2]. Plaintiff did not contact Rogers Group or report for work after July 15, 2010. *Id.*

A Rogers Group employee who does not call or report to work for three consecutive days is considered to have voluntarily quit employment with the Company. *Id.* Because Plaintiff did not call in or report for work for three consecutive work days, he was considered to have voluntarily quit, and his employment was terminated pursuant to Rogers Group's policy. *Id.* Defendant states that Plaintiff was never told that he was being fired or that he was not to return to work. *Id.*

Plaintiff states that he learned on July 16 and for three consecutive work days thereafter, that another person had been assigned to drive the truck that he had previously driven [Doc. 19]. Plaintiff did not call the Rogers Group dispatcher for assignments on July 16 or any day thereafter [Doc. 14-1].

Plaintiff never reported any complaints about being asked to change his Log entries to anyone at Rogers Group other than his allegations of verbal complaints to his immediate supervisor, Earl Webster. *Id.* Plaintiff did not report his complaints about being asked to change his Log entries to any federal or state agencies. *Id.*

Rogers Group is headquartered in Nashville, and maintains an AlertLine with a Nashville phone number for employees to report concerns [Doc. 14-3]. Defendant states that Plaintiff did not utilize the AlertLine to report his complaints. *Id.* Plaintiff responds that he did not call the AlertLine because he was aware of two calls made on the AlertLine and that Earl Webster had "blowed up over it" [Doc. 14-1]. Plaintiff also states

that there was a message to employees posted on the computer that anyone who "goes over my head to Nashville will be fired." *Id.*

Defendant moves for summary judgment stating that (1) the undisputed material facts demonstrate that Plaintiff was paid for all the hours to which he was entitled to pay under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA); (2) the undisputed material facts demonstrate that Plaintiff's claim for wrongful/retaliatory discharge fails as a matter of law under the FLSA as well as under the Tennessee common law; and (3) Plaintiff's claims under the Tennessee common law for wrongful discharge are barred by the statute of limitations. In support of its motion, Rogers Group relies on the pleadings, deposition of Lester Perkins, declarations of Earl Webster, Tina Mayes, and David Quint.

Plaintiff has responded in opposition to the motion, stating that (1) he was not paid for all the hours to which he was entitled to be paid; (2) his claim for wrongful/retaliatory discharge does not fail as a matter of law under the FLSA or under Tennessee common law; and (3) his claims under Tennessee common law for wrongful discharge are not barred by the statute of limitations. In support of his response, plaintiff relies on his response to Defendant's Statement of Undisputed Material Facts, Plaintiff's deposition testimony, Plaintiff's Declaration, and an award of unemployment benefits from the Tennessee Department of Employment Security.

## II.    Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is

6

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). Initially, the burden is on the moving party to conclusively show that no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question; but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving

7

party based on the evidence presented, it may enter summary judgment.  *Id.; Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    Analysis

### A.    Defendant's Objections to Plaintiff's Evidence

Defendant objects to portions of Plaintiff's Declaration filed in response to Defendant's motion for summary judgment, as well as to Plaintiff's submission of his award of unemployment benefits from the Tennessee Department of Employment Security [Docs. 22, 23].  Defendant's objections to Plaintiff's evidence must be resolved before the Court addresses the motion for summary judgment.  *See Loadman Group LLC v. Banco Popular North America*, 2013 WL 1154528, *1 (N.D. Ohio, Mar. 19, 2013). Plaintiff has not responded to Defendant's objections.

#### 1.    Plaintiff's Declaration

In order to be considered by the Court on a motion for summary judgment, an affidavit must satisfy three formal requirements:   (1) it must be made on personal knowledge; (2) it must set out facts that would be admissible in evidence; and (3) it must show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4).  Additionally, the party offering the affidavit must support the assertions made therein by citing to particular parts of materials in the record.  Fed. R. Civ. P. 56(c)(1)(A). Further, a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts earlier deposition testimony.  *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  The Sixth Circuit has also

8

held that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his previous sworn statement "without explaining the contradiction or attempting to resolve the disparity." *Aerel S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).

To determine whether a party is attempting to create a sham issue of material fact, the Sixth Circuit has instructed district courts to consider the following factors: (1) whether the affiant was cross-examined during his earlier testimony; (2) the affiant's access to the pertinent evidence at the time of his earlier testimony; (3) whether the affidavit was based on newly discovered evidence; and (4) whether the earlier testimony reflects confusion, which the affidavit attempts to explain. *Id.* at 909-10.

Defendant states that Paragraphs 3 and 5 of Plaintiff's Declaration provide as follows:

> 3. That during the time I was employed by Rogers Group, I was told to report to work at 6:00 o'clock a.m. and ride the van to Jamestown.

> 5. That I suppose I could have driven my own car. However, I was told to report to Caryville, ride the van to Jamestown, drive the truck in Jamestown, and ride the van back to Caryville.

[Doc. 19, p. 15]. However, in his sworn deposition testimony on this matter on February 20, 2013, when asked if anyone told him he had to ride in the van, Plaintiff testified as follows:

> Q. Did Mr. Webster ever tell you you had to ride in the van?
> A. I don't know. I honestly don't know.
>                         . . .
> Q. Did anybody else at Rogers Group tell you you had to ride in the van?
> A. No.

9

[Doc. 14-1, p. 6].

> Q. So nobody ever personally told you you had to ride the van?
> A. No. . . .

[Doc. 14-1, p. 7].

Plaintiff fails to explain these contradictions. Likewise, he has failed to demonstrate that his latest statements are due to previously unavailable evidence, that his previous deposition testimony was the product of confusion, or that there is independent evidence in the record to bolster his newly recalled facts. As stated previously, a party may not file an affidavit that contradicts earlier deposition testimony in an attempt to create a factual issue. *Reid,* 790 F.2d at 460. If a witness, who has knowledge of a fact, is questioned during his deposition about that fact, he is required to "bring it out at the deposition and cannot contradict his testimony in a subsequent affidavit." *Id.* The court agrees that Plaintiff's Declaration, filed after his deposition testimony, directly contradicts his deposition testimony that no one at Rogers Group told him he had to take the van to Jamestown, and is an attempt to create a "sham fact issue." *See Aerel,* 448 F.3d at 908. Accordingly, Defendant's objection to the statements is sustained, and the Court will not consider the statements in deciding the pending motion for summary judgment.

Defendant next objects to Paragraph 6 and the second sentence of Paragraph 8:

> 6. That I was at work, and expected to be paid, from the time I reported for the ride from Caryville to Jamestown, while in Jamestown, and on the ride back from Jamestown to Caryville.

> 8. . . . Mr. Webster in fact falsified a log, and told me to put it in my log book.

[Doc. 19, p. 15]. Defendant argues that these statements are only Plaintiff's conclusory opinions, and should be disregarded in deciding the motion for summary judgment. The court disagrees. The first sentence is a statement of Plaintiff's expectation of payment, not a legal conclusion. The second sentence is also not a legal conclusion, but a statement of alleged fact asserted by Plaintiff. Therefore, the Court will overrule Defendant's objections to these statements.

Defendant next argues that Paragraphs 10 and 15 contain hearsay statements.

> 10. . . . However, I do know that when a person contacted Nashville, Mr. Webster, upon finding out that a person called Nashville, stated that "anybody that goes over my head to Nashville will be fired."

> 15. That I learned on July 16, 2010, and for the three days thereafter, that another person was driving the truck which had been assigned to me.

[Doc. 19, p. 16]. In addition to being hearsay, Defendant argues that these statements lack foundation under Rule 602 of the Federal Rules of Evidence, as Plaintiff has not established that he has the requisite personal knowledge to support these statements.

Summary judgment affidavits must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002). Affidavits based on mere "information and belief," as opposed to facts the affiant knows to be true, are not proper. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831 (1950). In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and

established by specific facts.  *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n. 2 (6th Cir. 1996).  An affidavit must lay a foundation as to why the affiant is competent to testify to the matters stated therein.  *Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 647 (N.D. Ohio 2005).  Without a proper foundation, the affidavit may be disregarded. *Id.*

Moreover, courts cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion.  *N. Amer. Specialilty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).  Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing, and that a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  The burden of proving that the statement fits within a hearsay exception rests with the proponent of the hearsay exception, here, Plaintiff.  *United States v. Arnold*, 486 F.2d 177, 206 (6th Cir. 2007).  Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded.  *State Mut. Life Assur. Co. of America v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979).

Plaintiff has supplied no basis for his statements, let alone specific facts in the record supporting the statements. Plaintiff does not explain how he personally knows or is competent to testify that (1) "a person contacted Nashville" and that Webster, upon finding out that a person had called Nashville, stated that "anybody that goes over my head to Nashville will be fired," and (2) that he learned on July 16, 2010, and for the three days thereafter, that "another person was driving the truck which had been assigned

to me." Plaintiff fails to meet his burden under Rule 801(d)(2)(D) by failing to identify the unknown "person" declarant such that the court can determine whether the statement falls within a hearsay exception. Accordingly, Defendant's objection to the statements is sustained, and the court will not consider the statements in deciding the pending motion for summary judgment.

### 2.    Award of Unemployment Benefits

Last, Defendant argues that the Tennessee Department of Employment Security Decision awarding Plaintiff unemployment benefits is irrelevant and any probative value is outweighed by the unfair prejudice to Rogers Group. The Court agrees.

Under Tennessee Code Annotated § 50-7-304(k), unemployment claims are not to be considered in any other action:

> No finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

The Sixth Circuit Court of Appeals has interpreted the Tennessee statute to mean that decisions of the Tennessee Department of Employment Security cannot be used in civil cases because they are the result of "quick and inexpensive hearings with different standards of proof than civil trials. As a result, an unemployment hearing officer's decisions should not be admitted in an employment discrimination suit." *Fleming v. Sharp Mfg. Co. of Amer.*, 2012 WL 3049624 (W.D. Tenn. Jul. 25, 2012); *see also Reed v. Intermodal Logistics Serv. LLC,* 2011 WL 4565450 (W.D. Tenn. Sept. 29, 2011); *Wright*

13

*v. Columbia Sussex Corp.*, 2008 WL 972699 (E.D. Tenn. Apr. 7, 2008); *Pascual v. Anchor Advances Prods. Inc.*, 117 F.3d 1421 (6th Cir. 1997). Accordingly, Defendant's objection to the award of unemployment benefits from the Tennessee Department of Employment Security is sustained, and the Court will not consider the document in deciding the pending motion for summary judgment.

### B. Payment for Travel Time under the FLSA

Plaintiff alleges that he was not paid for the hours he was transported in the Company van to the work site in Jamestown, Tennessee. Defendant, on the other hand, asserts that Plaintiff's claims are barred by the Portal-to-Portal Act, which states that the FLSA does not require employers to compensate an employee for time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). Plaintiff responds that he "was not paid for all the hours to which he was entitled to be paid," but does not offer any legal argument in support of his claim for payment for travel time.

Under the FLSA, 29 U.S.C. § 206, employers must pay their employees the hourly minimum wage for time on the job. Under the "Portal-to-Portal Act," 29 U.S.C. § 254, employers do not have to pay the minimum wage to an employee for the following activities of the employee:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2)   activities which are preliminary to or postliminary to said principal activity or activities,

Which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). Thus, employees are entitled to compensation for travel time that is a principal activity of the employee. The question before the Court is whether the travel time of Plaintiff to and from Jamestown is a compensable principal activity or a noncompensable preliminary or postliminary activity. Courts have traditionally construed the term "principal activity" to include activities "performed as part of the regular work of the employees in the ordinary course of business . . . the work is necessary to the business, and is performed by the employees primarily for the benefit of the employer." *Dunlop v. City Electric, Inc.*, 527 F.3d 394, 401 (5th Cir. 1976).

Ordinary home-to-work travel is not compensable under the Portal-to-Portal Act unless a contract or custom of compensation exists between the employer and the employees. 29 U.S.C. § 254; 29 C.F.R. §§785.34-35, 790.7(f). "An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home-to-work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime." 29 C.F.R. § 785.35. "Riding on buses between a town and an outlying mine or factory where the employee is employed" is a preliminary or postliminary activity. 29 C.F.R. § 790.7. Federal courts which have addressed the issue concur. *See Bonilla v. Baker Concrete Constr. Inc.*, 487 F.3d 1340

15

(11th Cir. 2007) (holding that time spent traveling on employer-provided transportation to worksite was not compensable); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006) (holding that gas drillers in New Mexico were exempt from FLSA compensation for travel that ranged from thirty minutes to three and a half hours each way); *Ralph v. Tidewater Constr. Corp.*, 361 F.2d 806 (4th Cir. 1966) (holding that time workers spent traveling on an employer's boat to a construction site was not compensable under the Act); *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994) (holding that the four hours workers spent traveling on their employer's bus each day was not compensable under the Act). Despite these provisions, an employee is entitled to payment for any work that the employer requires the employee to perform during the commute. 29 C.F.R. § 785.41; *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999).

Based on the record before it, the Court finds that Plaintiff is not entitled to pay for travel to his job site. The only reason cited by Plaintiff in support of his claim for pay for his travel time is that Defendant provided a courtesy van for employees. In his deposition, Plaintiff admitted that no one told him he had to ride in the courtesy van. In addition, Plaintiff admitted that if he drove his car to Jamestown, he would not be entitled to pay for travel time. Moreover, the record does not show that Plaintiff performed any work for the employer before or during the trip to Jamestown. Plaintiff has presented no evidence that he received any instructions or other information before boarding the van that was integral or indispensable to his work driving a dump truck in Jamestown. Instead, the record shows that the van was provided as a courtesy by Rogers Group to

16

employees because of the cost of gas and other expenses associated with use of their own vehicles in traveling to the Jamestown site. Federal Rule of Civil Procedure 56(c) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Here, the Plaintiff has presented no evidence supporting his claim for travel compensation under the FLSA. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for payment for travel time under the FLSA.

### C.    Retaliatory Discharge under the FLSA

Defendant asserts that Plaintiff cannot establish a prima facie case of retaliatory discharge under the FLSA. Plaintiff has not responded to Defendant's argument, other than to say that his "claim for wrongful/retaliatory discharge does not fail as a matter of law under the FLSA or under Tennessee common law." Plaintiff offers no legal argument or record evidence to support his response or to refute Defendant's argument.

The anti-retaliation provision of the FLSA provides that an employer is prohibited from discharging or in any other manner discriminating against an employee because the employee has filed a complaint or instituted any proceeding under the Act. 29 U.S.C. § 215(a)(3). The burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to a FLSA claim of retaliation. *Moore v. Freeman*, 335 F.3d 558, 562 (6th Cir. 2004). To establish a prima facie case of retaliation, an employee must

prove that (1) he engaged in a protected activity under the FLSA; (2) his exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999). Such a prima facie showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination. *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).

Here, Plaintiff's alleged protected activity consisted of telling his immediate supervisor that he was mad because he was not getting paid for riding the Company van to Jamestown. The Supreme Court has held that oral complaints only constitute protected activity where such complaints provide the employer with "fair notice" that the employee is invoking rights under the FLSA. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1334 (2011). "The phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as

part of its business concerns." *Id.* Specifically, "to fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335. This standard is an "objective" one. *Id.*

Even considered in its best light, Plaintiff's oral "complaint" that he was mad because he was not getting paid for riding in the Company van to and from his job assignment in Jamestown does not meet the degree of formality required to invoke the FLSA's anti-retaliation provision. There is ample reason to find that Plaintiff's "complaint" is not "sufficiently clear and detailed" for Rogers Group to understand it, in light of both content and context, as an assertion of rights protected by the FLSA and a call for its protection. As to the content, Plaintiff's "complaint" never specifically invokes the FLSA, and is only a general complaint about not being paid for travel time. As for the context of his "complaint," Plaintiff made the statement to his immediate supervisor when called into his office to correct the two Log entries for July 10, 2010. Plaintiff testified that he refused to correct the time entries because he was mad over not being paid for travel time. Under these facts, no reasonable employer would be put on notice that Plaintiff was engaging in protected activity under the FLSA. *See Montgomery v. Havner,* 700 F.3d 1146 (8th Cir. 2012) (Employee's telephone call to her supervisor to inquire why she was docked ten minutes from her time card did not constitute sufficiently detailed complaint so that supervisor should have reasonably understood that employee

was alleging FSLA violation); *Alvarado v. Bayshore Grove Mgt LLC*, 66 So.3d 405 (Fla.App. 3 Dist. 2011) (Oral complaint about failure to pay employee for hours he worked did not meet degree of formality required to invoke the anti-retaliation provision of FLSA where he complained to management that he was not receiving correct pay since his time records were altered so as to avoid having to pay him overtime); *Jones v. Hamic*, 875 F. Supp. 2d 1334 (M.D. Ala. 2012) (Employee's letter to supervisor stating that she was "filing a grievance" which listed several complaints, including alleged demotion to exempt status, did not amount to protected activity under the FLSA); *c.f. Kasten v. Saint-Gobain Performance Plastics Co.,* (7th Cir. 2012) (Complaints sufficient to put company on notice of FLSA claim where plaintiff specifically complained to multiple supervisors on five separate occasions that location of time clock was in violation of law). Moreover, Plaintiff admits that he never reported or complained about not being paid for travel time to the Rogers Group AlertLine, or to any state or federal agency. Plaintiff's complaints were not sufficient, as a matter of law, for Rogers Group to understand them as an assertion of rights under the FLSA. Therefore, the court finds that Plaintiff fails to establish that he engaged in protected activity under the FLSA.

Next, there is no evidence of a causal connection between Plaintiff's verbal complaint to his immediate supervisor and his separation from employment. It is undisputed that Plaintiff was terminated from his employment with Rogers Group in July 2010. The record shows that Plaintiff was terminated only after he failed to appear for work or call in for three consecutive days. At the July 15 meeting with Webster over his

Log entries, Plaintiff was told he could return to work after correcting the dates, but Plaintiff stated he "was not changing anything" and that he was mad because he was not getting paid for his travel time to Jamestown. Webster testified that all Plaintiff had to do was correct the date on one of his two Log entries for July 10, and he could have gone back to work that same day. Plaintiff admitted in his deposition that the "off duty" Log entry should have been dated July 11, 2010. Plaintiff refused to correct his Log entries, and instead, chose not to return to work or call in after July 15, 2010. A Rogers Group employee who does not call or come to work for three consecutive days is considered to have voluntarily quit employment with the Company. Although causation can be inferred based on the timing of his termination, Plaintiff's decision to not report for work or call in for assignments is an intervening event. Even if Plaintiff could establish a prima facie case of retaliation, which he cannot, any prima facie case is rebutted by Defendant's showing of a legitimate, nondiscriminatory reason for his termination. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for retaliatory discharge under the FLSA.

### D. Wrongful/Retaliatory Discharge under Tennessee Common Law

Plaintiff also asserts a claim for wrongful/retaliatory discharge under Tennessee common law. In his Complaint, Plaintiff alleges:

9. That on occasion, the Defendant directed Plaintiff, and others, to falsify their driving records.

10. That Plaintiff refused to do so.

11.  That Plaintiff in fact has, in his records, a falsified driving report, such report falsified by Defendant.

12.  That Plaintiff in fact consistently objected to Defendant over Defendant's failure to pay Plaintiff for the hours he was transported and over the falsification of driving records, which Plaintiff refused to falsify.

13.  That as a result of Plaintiff's complaints of the foregoing, Defendant in July 2010, relieved Plaintiff of Plaintiff's employment.

[Doc. 1].

Defendant asserts that Plaintiff cannot establish a prima facie case of retaliatory discharge under Tennessee common law because Plaintiff did not report his claims that he was allegedly required to falsify his Log entries; the undisputed facts demonstrate that Plaintiff was never asked to falsify his Log; and that Plaintiff never refused to participate in falsifying his Log. Finally, Defendant asserts that it has proffered a legitimate nondiscriminatory reason for the termination of Plaintiff's employment and Plaintiff cannot establish that the reason is pretextual.  Plaintiff has not responded to Defendant's argument, other than to say that his "claim for wrongful/retaliatory discharge does not fail as a matter of law . . . under Tennessee common law."  Plaintiff offers no legal argument to support his response or to refute Defendant's argument.

It is well-settled that Tennessee recognizes the employment-at-will doctrine, with the "concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." *Stein v. Davidson Hotel Co..*, 945 S.W.2d 714, 716 (Tenn. 1997).  Tennessee courts also recognize exceptions to this doctrine:  "In

22

Tennessee an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy, which is evidenced by an unambiguous constitutional, statutory, or regulatory provision." *Id.* at 717. These exceptions attempt to strike a balance between "the employment-at-will doctrine and rights granted employees under well-defined expressions of public policy." *Id.* Thus, "the tort action of retaliatory or wrongful discharge is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy." *Id.* The Tennessee Supreme Court has emphasized that "the exception to the employment-at-will doctrine must be narrowly applied and not be permitted to consume the general rule." *Id.* at n. 3.

To establish a retaliatory discharge claim under the Tennessee common law, a plaintiff must prove the following: (1) that an employment-at-will relationship existed; (2) that the employee was discharged; (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy. *Crews v. Buckman Laboratories Int'l Inc.,* 78 S.W.3d 852, 862 (Tenn. 2002).

If a plaintiff establishes a prima facie case under common law, based on direct or circumstantial evidence, showing a causal relationship between the employee's refusal to

participate in or to remain silent about an illegal activity and the employer's decision to terminate the employee, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for its actions. *Provonsha v. Students Taking a Right Stand, Inc.*, 2007 WL 4232918 at *4 (Tenn. Ct. App. Dec. 3, 2007). If the defendant articulates such a reason, the burden of proof shifts back to the plaintiff to show that defendant's proffered reasons are pretextual or not worthy of belief. *Id.* To meet this burden, a plaintiff "must show by admissible evidence either (1) that the proffered reason has no basis in fact; (2) that the proffered reasons did not actually motivate his discharge; or (3) that they were insufficient to motivate the discharge." *Id.*

Here, it is undisputed that an employment-at-will relationship existed; however, as stated above, Plaintiff is unable to show that he was discharged by Defendant for attempting to exercise his rights under the FLSA, or for any other reason which violates a clear public policy. Moreover, to be actionable, a state law retaliation claim based upon a refusal to remain silent about illegal activities requires that Plaintiff complain to someone other than the employer that is allegedly in violation of the law. *See e.g., Lawson v. Adams*, 338 S.W.3d 486, 497 (Tenn. Ct. App. 2010) (plaintiff required to establish that he made a report to some entity other than former employer regarding former employer's alleged illegal activities). Plaintiff must show that he actually reported the alleged wrongdoing to someone other than his employer. The court agrees that Plaintiff fails on this point, because he has not identified any person or entity to which he complained, other than his immediate supervisor, Webster. Nowhere does the record reflect that

Plaintiff made any attempt to report alleged "falsification of records" to outside officials or regulators. Plaintiff admitted that he did not report his complaints about "falsified Log entries" to any federal or state agencies. *See e.g., Riddle v. First Tennessee Bank*, 2011 WL 4348298 at *11 (M.D. Tenn. 2011) ( "an employee must make a report to some entity other than the person or persons who are engaging in the allegedly illegal activities").

Second, Plaintiff claims that he was asked to "falsify driver records," and he refused to do so. However, in his deposition, Plaintiff testified that he never refused to falsify driver logs. The record reflects that his immediate supervisor asked Plaintiff to correct his Log entries for July 10, 2010, but the record contains no evidence that Plaintiff was ever asked to falsify his Log. At his deposition, Plaintiff was asked:

> Q. Did you refuse to sign the driving record that you say Mr. Webster changed in the summer of 2009?
>
> A. No.
>
> Q. Why not?
>
> A. I figured I would get fired.
>
> Q. Did you at any time refuse to change what you had put down on your driving records?
>
> A. Do. What?
>
> Q. Was there ever any time when you refused to write down any changes on your driving record?
>
> A. On the logbooks?

Q. Yes. It says you refused to do so in paragraph 10, and I'm just trying to say, did you ever refuse –

A. Other than that time?

Q. In 2009.

A. No.

Q. Did you ever refuse to make any changes in 2010?

A. No.

[Doc. 14-1].

Other than his complaints about his Log entries for July 10, 2010, Plaintiff has provided no evidence that the Defendant directed him to falsify any driving record. Plaintiff's allegations are nothing more than his opinions and legal conclusions couched as facts which do not support his claims. To avoid summary judgment, the nonmoving party must "come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.,* 285 F.3d 415, 424 (6th Cir. 2002). Because Plaintiff has presented no evidence that he refused to participate in or to remain silent about any alleged illegal activity, the court finds that Plaintiff is unable to establish a prima facie case for retaliatory discharge under Tennessee common law. Moreover, Plaintiff has introduced no evidence showing a causal connection between his discharge and his alleged refusal to participate in or remain silent about alleged illegal activity, apparently leaving the Court to make that inference based on temporal proximity. However, the Sixth Circuit has instructed that "temporal proximity, standing alone, is not enough to

establish a causal connection for a retaliation claim." *Spengler v. Worthington Cylinders,* 615 F.3d 481, 494 (6th Cir. 2010).

Even if Plaintiff could establish a prima facie case, Defendant has proffered a legitimate reason for Plaintiff's termination. Rogers Group terminated Plaintiff's employment for the simple reason that he did not report to work for three consecutive days. Webster testified that if Plaintiff had corrected his Log entries for July 10, he could have returned to work that day. Instead, Plaintiff chose to leave and not return. Plaintiff admits that he did not call in or return to work after he was asked on July 15, 2010, to correct his duplicate July 10, 2010 Log entries. Under these circumstances, Rogers Group considered Plaintiff to have voluntary quit his employment with Rogers Group and, therefore, Plaintiff was separated from his employment with Rogers Group. "Evidence of causation requires more than the facts showing employment, the exercise of rights, and a subsequent discharge. It requires direct evidence or compelling circumstantial evidence. Plaintiff's mere belief or understanding of why he was dismissed, is not sufficient to create a genuine issue of material fact." *Provonsha*, 2007 WL 4232910 at *5-6. Plaintiff has produced no evidence that Defendant acted out of retaliatory animus. Even drawing all inferences in the light most favorable to Plaintiff, the factual record shows that Defendant's proffered reason has ample basis in fact. Plaintiff has not presented any evidence of pretext sufficient to create a genuine issue of material fact. Plaintiff bears the burden of coming forward with specific evidence creating a genuine issue of fact once Defendant has raised summary judgment.

*Treadaway*, 611 F. Supp. 2d at 784. The court finds that Plaintiff has not met his obligation of proving causation under Tennessee common law. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for wrongful/retaliatory discharge under Tennessee common law.

Because it has granted summary judgment on the above grounds, the Court does not reach Defendant's argument that Plaintiff's claim under Tennessee common law is barred by the statute of limitations pursuant to Rules 3 and 4.01 of the Tennessee Rules of Civil Procedure for Plaintiff's delay in serving process upon Defendant.

## IV.    Conclusion

For the reasons stated herein, the Court hereby **GRANTS** Defendant Rogers Group's motion for summary judgment [Doc. 14] and this case is **DISMISSED**.

ENTER:


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE